## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI EASTERN DIVISION

| | |
|---|---|
| RAYMOND REDLICH and CHRISTOPHER OHNIMUS, | |
| Plaintiffs, | Case No. 4:19-cv-00019 |
| v. | |
| CITY OF ST. LOUIS, a municipality and political subdivision of the State of Missouri, | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF – CIVIL RIGHTS [42 U.S.C. § 1983] |
| Defendant. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*"I was hungry, and you gave me something to eat; I was thirsty, and you gave me something to drink; I was a stranger, and you invited me in; naked, and you clothed me; I was sick, and you visited me; I was in prison, and you came to me. …Truly, I say to you, to the extent that you did it to one of these brothers of mine, even the least of them, you did it to me."* – Gospel of Matthew 25:35-36, 40

### INTRODUCTION

1. On October 31, 2018, a police officer employed by the City of St. Louis ("the City") gave the Plaintiffs, Raymond Redlich ("Redlich") and Christopher Ohnimus ("Ohnimus") City Court Summonses because, in an effort to fulfill their religious obligation to provide food to the hungry, they were sharing bologna sandwiches with homeless persons on the streets of the City.

2. Although the summonses did not specify what ordinance the Plaintiffs had allegedly violated, the police officer who issued the citations also provided the

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019

Page 1 of 21

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

1    Plaintiffs with two documents that led the Plaintiffs to believe that they were accused

2    of violating St. Louis City Code § 11.42.230, Chapter 9 ("the Temporary Food Service

3    Ordinance").

4        3.   This lawsuit seeks to preserve and to vindicate constitutional rights

5    protected by the First and Fourteenth Amendments to the U.S. Constitution,

6    including the free exercise of religion, the freedom of expression, the freedom of

7    association, and the equal protection of the laws; the Plaintiffs also seek the

8    protection of their rights of conscience as guaranteed by Article I, § 5 of the Missouri

9    Constitution and Missouri's Religious Freedom Restoration Act, Mo. Rev. Stat. §

10   1.302.

11       4.   The Plaintiffs are bringing this suit not only on their own behalf, but on

12   behalf of all other persons who, without any commercial motivation, wish to share

13   food with the hungry.

14                           **JURISDICTION AND VENUE**

15       5.   This Court has jurisdiction because this action arises under the First and

16   Fourteenth Amendments to the United States Constitution. 28 U.S.C. § 1331 (federal

17   question).

18       6.   The Plaintiffs also raise claims under Article I, § 5 of the Missouri

19   Constitution and the Missouri Religious Freedom Restoration Act, Mo. Rev. Stat. §

20   1.302; this Court has jurisdiction over those claims as well. 28 U.S.C. § 1367

21   (supplemental jurisdiction).

22       7.   This Court has jurisdiction over this matter pursuant to Section 1 of the

23

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019          Page 2 of 21          FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

Civil Rights Act of 1871. *See* 42 U.S.C. §§ 1983, 1988; 28 U.S.C. § 1343(a).

8.   This Court is empowered to grant the relief the Plaintiffs request pursuant to the federal Declaratory Judgment Act. *See* 28 U.S.C. §§ 2201 and 2202.

9.   The United States District Court for the Eastern District of Missouri is the proper venue for this case pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the Plaintiffs' claims occurred in St. Louis City.

10. Venue is proper in the Eastern Division pursuant to Local Rule 3-2.07.

## PARTIES

11.   Plaintiff Redlich is a citizen of the United States and a citizen of Missouri who lives and works in St. Louis City.

12.   Plaintiff Ohnimus is a citizen of the United States and a citizen of Missouri who lives and works in St. Louis City.

13.   Defendant City of St. Louis, is a municipality and political subdivision of the State of Missouri.

## FACTS

14.   Redlich is a Christian who believes it is his obligation as a follower of Jesus Christ to feed the hungry, to give drink to the thirsty, and to provide love, compassion, and company to the suffering. *See, e.g.,* Gospel of Matthew 25:31-46.

15.   In obedience to the demands of his faith and his conscience, Redlich has for years sought out neighbors in need of food, drink, companionship, and warmth so that he could address their needs and so that, through the acts of providing food, drink, blankets, hats, gloves, companionship, and prayer, he might communicate to

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019                    Page 3 of 21                    FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

1  the recipients that God loves and values them, regardless of their circumstances.

2    16.  As a result of Redlich's ministry, he has developed friendships with many

3  of those he has served, and his efforts have also occasionally resulted in the persons

4  he has served coming to share Redlich's faith and choosing to become Christians.

5    17.  Ohnimus himself has previously experienced hard times, and he has

6  welcomed the food, drink, fellowship, and encouragement that Redlich and others

7  freely provided.

8    18.  The receipt of food, drink, fellowship, and encouragement from Redlich and

9  others eventually led Ohnimus to begin serving others in the same way he had once

10  been served.

11    19.  Ohnimus also believes it is his religious obligation as a follower of Jesus

12  Christ to feed the hungry, to give drink to the thirsty, and to provide love, compassion,

13  and company to the suffering.

14    20.  Ohnimus uses the acts of providing food, drink, blankets, hats, gloves,

15  companionship, and prayer, to communicate to the recipients that God loves and

16  values them regardless of their circumstances.

17    21.  On October 31, 2018, Redlich and Ohnimus were engaging in religious

18  practice, communicating God's love to homeless persons by providing them with

19  water, bologna sandwiches, prayer and fellowship on the streets of the City.

20    22.  Redlich and Ohnimus were sharing these bologna sandwiches just hours

21  before thousands of other St. Louisans would celebrate Halloween by sharing food at

22  parties and handing out goodies to trick-or-treaters.

23

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019

Page 4 of 21

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

23. For some of the people with whom Redlich and Ohnimus interacted, the bologna sandwiches they received would be the only food they would get to eat that day.

24. Stephen Ogunjobi ("Ogunjobi"), an officer of the St. Louis Metropolitan Police Department, observed Redlich and Ohnimus sharing food with homeless people, told them that what they were doing was unlawful, and issued each of them a City Court Summons to appear at a specific date and time "to answer a complaint information charging [them] with 'operating w/o permit'." A true and correct copy of the summons issued to Redlich is attached to this complaint as Plaintiffs' Exhibit 1.

25. Each summons stated that failure to appear in court at the specified date and time might result in the issuance of a warrant for their arrest.

26. Each summons was issued under the color of law.

27. Although the summonses did not specify any ordinance alleged to have been violated, Ogunjobi gave Redlich and Ohnimus a flyer entitled "Requirements for Operating a Temporary Food Establishment" and a two-page document entitled "Feeding the Homeless." True and correct copies of each of these documents are attached to this complaint as Plaintiffs' Exhibits 2 and 3.

28. The "Feeding the Homeless" document expressly states that "Food prepared in a private home may not be used or offered for human consumption to the public" and that anyone distributing food must obtain either a "temporary food service establishment" permit (which itself requires the applicant to have a separate "vendor's permit") or a "permanent food service establishment" permit (which

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019                    Page 5 of 21                    FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

1    requires the applicant to have a business license and to submit to an inspection).

2        29. The document entitled "Requirements for Operating a Temporary Food

3    Establishment" expressly states "Foods prepared in a home or other facility not under

4    inspection are prohibited," and it states that any person distributing food must have

5    present "three food-grade washtubs/containers and [a] 5-gallon or larger container of

6    potable water," a "waste receptacle," "a handwashing facility," and "hair coverings."

7        30. Upon information and belief, the documents the officer provided Redlich

8    and Ohnimus reflect the City's official position, limiting the circumstances under

9    which residents may lawfully share food with their neighbors on the streets of the

10   City.

11       31. Upon information and belief, the City bases its official position on the

12   Temporary Food Service Ordinance.

13       32. Upon information and belief, the City's police officers have over the past

14   few years given citations to a number of persons other than the Plaintiffs for the

15   alleged offense of unlawfully sharing food with homeless persons in a manner that

16   did not comply with the City's restrictions.

17       33. The Plaintiffs *do not* dispute the City's interpretation of the Temporary

18   Food Service Ordinance as requiring anyone who would share food with homeless

19   persons to obtain one or more permits and to comply with the same regulations the

20   City imposes on food service professionals.

21       34. The Plaintiffs *do not* allege that the Temporary Food Service Ordinance is

22   facially unconstitutional; they concede that it may constitutionally be applied against

23

Complaint
*Redlich, et al. v. City of St. Louis*                    Page 6 of 21
Case No. 4:19-cv-00019

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

individuals engaged in the commercial preparation and distribution of food to the public.

35. Instead, the Plaintiffs contend that as applied to them and to others similarly situated the Temporary Food Service Ordinance unconstitutionally and unlawfully restricts their free exercise of religion, their freedom of expression, their freedom of association, their rights of conscience, and denies them equal protection of the laws.

36. Redlich and Ohnimus share food with their neighbors on the street several days out of each week, using their food-sharing efforts to share God's love with scores of St. Louisans each week.

37. The foods that Redlich and Ohnimus share with the hungry on the streets of the City are frequently donated by local churches; they are sometimes, though not always, prepared in facilities subject to inspection by the City.

38. In addition to the food, water, clothing, and blankets that Redlich and Ohnimus provide, they also provide faith-related written material such as information sheets, gospel tracts, and copies of sermons.

39. Redlich and Ohnimus believe that if they are not allowed to share food with their neighbors, it will dramatically impact not only the performance of their religious duty and the number of people willing to receive their message, but it will also make their message of love and concern for those in need seem less sincere; they believe that blankets and water are not an adequate substitute for food when it comes to demonstrating love and concern for the recipients' well-being.

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019

Page 7 of 21

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

40.  The Plaintiffs do not have the resources to obtain the permits the City says are required to share food with the homeless, nor do they have the resources to obtain and carry with them the equipment the City requires of those operating a permitted Temporary Food Establishment.

41.  If the Plaintiffs were limited to sharing foods prepared in facilities subject to inspection by the City, their ability to share food with the needy would, at best, be severely limited and would, at worst, be eliminated altogether.

42.  Many of the people with whom the Plaintiffs share food have physical or psychological conditions that would prevent them from going to a permitted Food Service Establishment.

43.  Redlich and Ohnimus also believe that their faith requires them to **seek out** those in need and serve them **where they are found**, not to require the hungry to come to a centralized location before they can receive the food they need.

## CLAIMS FOR RELIEF

## COUNT I

### Free Exercise of Religion –

### First and Fourteenth Amendments

44.  The Plaintiffs incorporate by reference the allegations made in each preceding paragraph as if each allegation was set forth herein.

45.  The First Amendment to the U.S. Constitution, made applicable to state and local governments through the Fourteenth Amendment, forbids the government to prohibit the free exercise of religion.

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019

Page 8 of 21

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

46. The City has acted under the color of law to interfere with the Plaintiffs' freedom to carry out an act required by their religious convictions, thus violating the Free Exercise Clause of the First Amendment.

47. Specifically, the City has interpreted and enforced the Temporary Food Service Ordinance in such a way that it would be unlawful for the Plaintiffs to fulfill their religious obligation to share food with hungry persons on the streets of St. Louis because the Plaintiffs cannot reasonably comply with the City's permitting and regulatory requirements.

48. Neither Redlich nor Ohnimus could afford to purchase food prepared at one of the City's "approved" facilities (which are primarily restaurants and grocery stores) in quantities sufficient to serve the number of neighbors who need their help.

49. The facts of this case show that the Plaintiffs face a real, concrete threat of arrest and prosecution if they continue to fulfill their religious obligation to share food with hungry persons on the streets of St. Louis.

50. The U.S. Supreme Court has previously held, in *Employment Division v. Smith*, 494 U.S. 872 (1990), that, so long as a law is religiously-neutral and generally applicable, the Free Exercise Clause does not require courts to apply heightened judicial scrutiny to that law even if it infringes upon a person's religious practice.

51. The Plaintiffs in this case expressly contend that *Employment Division* was incorrect on this point and that a proper understanding of the Free Exercise Clause requires courts to subject even a religiously-neutral, generally applicable law to the strict scrutiny insofar as that law's application makes it unlawful for a person

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019

Page 9 of 21

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

to engage in a practice required by their religion or requires a person to perform an act prohibited by their religion; the Plaintiffs acknowledge that this Court is bound to follow the U.S. Supreme Court's holding in *Employment Division*, but they wish to preserve for review the question of whether *Employment Division* should be overturned.

52. But even if *Employment Division* was correctly decided, the majority opinion in that case suggests that a religiously-neutral, generally applicable law will be subject to strict scrutiny if it restricts a religious practice that is also linked with another constitutionally-protected freedom, such as the freedom of speech or the freedom of association. *See Employment Division*, 494 U.S. at 881-82.

53. Consequently, even if strict scrutiny might not be warranted by the mere fact that the City is applying the Temporary Food Service Ordinance in a way that burdens the Plaintiffs' religious duty to share food with the hungry, this Court should nonetheless apply strict scrutiny because (as described below) the restricted religious act is inextricably tied to the Plaintiffs' freedom of expression and freedom of association.

54. When courts apply strict scrutiny, the challenged law is presumed to be unconstitutional and the government can only justify the infringement of constitutional freedoms by showing that the law advances a compelling government interest and that the law is narrowly tailored so that it does not prohibit more constitutionally-protected liberty than is necessary to serve that compelling government interest.

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019

Page 10 of 21

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

55. In this case, the City cannot show that the Temporary Food Service Ordinance is narrowly tailored; the City's application of the Temporary Food Service Ordinance to the Plaintiffs reveals that the ordinance prohibits far more constitutionally-protected conduct than is necessary to serve any compelling government interest.

56. Unless this Court declares that the Temporary Food Service Ordinance is unconstitutional as applied to the Plaintiffs and to persons similarly situated, the Plaintiffs will suffer great and irreparable harm due to the deprivation of their freedom to fulfill their religious obligation to share food with the hungry persons they encounter on the streets of St. Louis.

## COUNT II

### Freedom of Expression—

### First and Fourteenth Amendments

57. The Plaintiffs incorporate by reference the allegations made in each preceding paragraph as if each allegation was set forth herein.

58. Constitutional protection for the freedom of speech extends beyond the spoken or written word, reaching expressive conduct as well.

59. Many people in our society treat those living on the streets as nuisances to be ignored or avoided rather than as fellow human beings worthy of respect, time, attention, and compassion.

60. In addition to being an act required by their faith, Redlich and Ohnimus believe that sharing food with those living on the streets sends a crucial message,

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019

Page 11 of 21

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

1  both to the recipient of the food and to the surrounding community, that the recipient

2  is a loved and valued member of society; Redlich and Ohnimus use the sharing of food

3  to build relationships with their neighbors living on the street and to communicate

4  their message about God's love and concern for even the dispossessed and "the least

5  of these."

6      61.  The Temporary Food Service Ordinance restricts the Plaintiffs' freedom of

7  expression because preparing food for others and sharing it with them is a uniquely

8  powerful way to communicate love for and solidarity with the food's recipients—

9  particularly when those recipients may feel unwanted by the community that

10  surrounds them.

11      62.  In addition to the message the Plaintiffs convey through the act of sharing

12  food with those in need, the Plaintiffs also distribute gospel tracts and written

13  sermons alongside the food they share, amplifying the expressive nature of the act.

14      63.  The Eleventh Circuit Court of Appeals recently held that the act of publicly

15  sharing food with the homeless—particularly in conjunction with the distribution of

16  literature—is an expressive act within the protections of the First Amendment. *See*

17  *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1242

18  (11th Cir. 2018).

19      64.  As the Eleventh Circuit noted, "the significance of sharing meals with

20  others dates back millennia," and the court specifically made reference to Jesus's

21  sharing of meals with tax collectors and sinners "to demonstrate that they were not

22  outcasts in his eyes," as well as to the way that our Thanksgiving holiday centers

23

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019                    Page 12 of 21                    FREEDOM CENTER OF MISSOURI
                                                                          14779 Audrain Road 815
                                                                          Mexico, Missouri 65265
                                                                          (573) 567-0307

1    upon the idea that sharing food is way of expressing thanks for blessings. *Id.* at 1243.

2       65. This Court should subject the City's application of the Temporary Food

3    Service Ordinance to strict scrutiny under the hybrid rights theory endorsed in

4    *Employment Division*, because the Plaintiffs' sharing of food is both an exercise of

5    religion and an expressive act.

6       66. However, if this Court declines to apply strict scrutiny, it must apply the

7    test set forth in *U.S. v. O'Brien*, 391 U.S. 367 (1968), to determine if the City's

8    application of the Temporary Food Service Ordinance improperly restricts the

9    Plaintiffs' freedom of expression.

10      67. The *O'Brien* test requires the government to assert a substantial

11   government interest, but (upon information and belief) the City's interest in

12   prohibiting residents from freely sharing food with the homeless is rooted in the City's

13   assumption that controlling where and under what circumstances people may

14   lawfully assist others in need will allow the City to steer homeless persons into parts

15   of town where their existence will be less noticeable; trying to make the homeless less

16   noticeable is not even a legitimate governmental interest, much less a "substantial"

17   government interest.

18      68. Even if the City contends that its application of the Temporary Food

19   Service Ordinance is supported by an interest in safeguarding the health and safety

20   of homeless persons, the City would still fail the *O'Brien* test because it cannot

21   produce evidence that those living on the City's streets are better off going hungry

22   rather than eating food freely shared with them by people who sincerely care about

23

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019                    Page 13 of 21

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

1    their health and comfort.

2       69.  Because the City has no legitimate interest in trying to make the homeless

3    less noticeable, and because denying homeless persons access to food prepared and

4    freely offered by those who care about their health and comfort does not advance any

5    interest the City might have in safeguarding the health and safety of homeless

6    persons, the City cannot justify its application of the Temporary Food Service

7    Ordinance against the Plaintiffs and others who wish to engage in the expressive act

8    of sharing food with the homeless.

9       70.  Unless this Court declares that the Temporary Food Service Ordinance is

10   unconstitutional as applied to the Plaintiffs and to persons similarly situated, the

11   Plaintiffs will suffer great and irreparable harm due to the deprivation of their

12   freedom to engage in the expressive act of sharing food with hungry persons they

13   encounter on the streets of St. Louis.

14                                    **COUNT III**

15           **Equal Protection of the Laws and Freedom of Association—**

16                    **First and Fourteenth Amendments**

17      71.  The Plaintiffs incorporate by reference the allegations made in each

18   preceding paragraph as if each allegation was set forth herein.

19      72.  The Equal Protection Clause of the Fourteenth Amendment provides that

20   "no state shall deny to any person within its jurisdiction the equal protection of the

21   laws;" in other words, the law should treat all similarly-situated persons alike.

22      73.  Where the government applies a law or policy in such a way that groups of

23

people are treated differently, courts must evaluate whether that differential treatment violates the Equal Protection Clause.

74.  Courts apply strict scrutiny where the differential treatment under the law is based on a suspect classification or affects a fundamental right.

75. The City's policy of applying the Temporary Food Service Ordinance to prohibit the non-commercial sharing of food with homeless persons creates a differential treatment that affects the Plaintiffs' freedom of association—a fundamental right protected under the First Amendment and applied to state and local governments through the Fourteenth Amendment.

76. It is extraordinarily common for people to share with each other food prepared in homes or other locations that have not been given City permits or inspections; residents acting without a City permit might bring home-prepared food to each others' houses, to picnics in a park, to backyard barbeques, to celebrations at a school, to meetings at an office, to potluck dinners at a church, or to tailgate parties outside of sporting events.

77. The City has not contended that sharing home-prepared food in any of these contexts might run afoul of the Temporary Food Service Ordinance.

78. Instead, the City has focused on applying the Temporary Food Service Ordinance in such a way that it is unlawful for residents freely to share food with homeless persons—thus penalizing those residents on the basis of those with whom they choose to associate.

79. Had the Plaintiffs chosen to share food in a neighbor's home or backyard,

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019

Page 15 of 21

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

1  at a school, church, or office, or outside of a sporting event, the City would not have

2  interfered. It is only because the Plaintiffs chose to share food with hungry neighbors

3  who are living on the streets that the City issued them summonses and ordered them

4  to show up in court or to face arrest.[1]

5  80.  Because the City's application of the Temporary Food Service Ordinance

6  applies the law differently based on the persons with whom the Plaintiffs have chosen

7  to associate, this Court must apply strict scrutiny when evaluating the Plaintiffs'

8  Equal Protection claim.

9  81.  The City's selective application of the law against those sharing food with

10  the homeless cannot survive strict scrutiny because the policy does not advance any

11  compelling government interest and the policy is not narrowly tailored because it

12  prohibits far more constitutionally-protected liberty than is necessary to serve any

13  compelling interest the City might invoke.

14  82.  In the alternative, the City's application of the Temporary Food Service

15  Ordinance also violates the Equal Protection Clause because it denies one group of

16  residents—homeless persons—the freedom to make choices that all other persons

17  enjoy when it comes to accepting food freely offered by others.

18  83.  Residents freely offered home-prepared food while associating with people

19  in any of the contexts noted in Paragraph 79 would be free to decide for themselves

20  whether to accept and eat the food; the City's policy treats homeless people like

21

22

23

---

[1] It was only after the Plaintiffs had both arrived at the City Court and waited nearly an hour for their citations to be addressed that the City Attorney told them that he would not pursue the case against them.

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019

Page 16 of 21

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

1   second-class citizens by denying them the freedom to make that choice.

2   84. The City cannot show any evidence that denying homeless people the

3   freedom to choose whether they will accept and eat food freely offered to them on the

4   streets advances any legitimate governmental interest.

5   85. Unless this Court declares that the Temporary Food Service Ordinance is

6   unconstitutional as applied to the Plaintiffs and to persons similarly situated, the

7   Plaintiffs will suffer great and irreparable harm due to the deprivation of the equal

8   protection of the laws which has resulted because of their association with the hungry

9   persons they encounter on the streets of St. Louis.

10   ## COUNT IV

11   ### Rights of Conscience—

12   ### Missouri Constitution Article I, Section 5

13   86. The Plaintiffs incorporate by reference the allegations made in each

14   preceding paragraph as if each allegation was set forth herein.

15   87. Sharing food with those in need is not just an exercise of religion, it is an

16   act that Redlich and Ohnimus feel compelled to perform as a matter of conscience.

17   88. The Missouri Constitution recognizes protections for citizens' "rights of

18   conscience" that go above and beyond the protections the First Amendment

19   acknowledges for the "free exercise of religion," stating "[t]hat all men and women

20   have a natural and indefeasible right to worship Almighty God according to the

21   dictates of their own consciences; [and] that no human authority can control or

22   interfere with the rights of conscience" other than to prevent "practices inconsistent

23

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019

Page 17 of 21

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

1   with the good order, peace or safety of the state, or with the rights of others." *Compare*

2   U.S. Const. Amendment I *with* Mo. Const. Art. I, § 5.

3       89.  The Plaintiffs contend that even if the First and Fourteenth Amendments

4   do not require courts to apply strict scrutiny to the City's application of the

5   Temporary Food Service Ordinance, the City's application of this ordinance against

6   the Plaintiffs has nonetheless improperly interfered with their rights of conscience.

7       90. Because the City cannot show that freely sharing food with homeless

8   persons is "inconsistent with the good order, peace or safety of the state, or with the

9   rights of others," Article I, § 5 of the Missouri Constitution prohibits the City from

10  interfering with that act.

11      91.  Unless this Court declares that the Temporary Food Service Ordinance is

12  unconstitutional as applied to the Plaintiffs and to persons similarly situated, the

13  Plaintiffs will suffer great and irreparable harm due to the City's unjustified

14  interference with their rights of conscience, which compel the Plaintiffs to share food

15  with the hungry persons they encounter on the streets of St. Louis.

16                          **COUNT V**

17          **Missouri Religious Freedom Restoration Act—**

18                  **Mo. Rev. Stat. § 1.302**

19      92. The Plaintiffs incorporate by reference the allegations made in each

20  preceding paragraph as if each allegation was set forth herein.

21      93. In 2003 the Missouri General Assembly passed the Missouri Religious

22  Freedom Restoration Act (RFRA), which prohibits any government authority from

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019                    Page 18 of 21                    FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

restricting a person's free exercise of religion unless (1) the restriction is generally applicable and does not discriminate against religion or among religions ***and*** (2) the governmental authority demonstrates that application of the restriction to the person is "***essential to further a compelling governmental interest, and is not unduly restrictive considering the relevant circumstances***." Mo. Rev. Stat. § 1.302.1. (emphasis added)

94. RFRA specifies that, as used in that section, "'exercise of religion' shall be defined as an act or refusal to act that is substantially motivated by religious belief, whether or not the religious exercise is compulsory or central to a larger system of religious belief." Mo. Rev. Stat. § 1.302.2.

95. For the reasons stated above, the City's application of the Temporary Food Service Ordinance restricts the Plaintiffs' freedom to perform an act—sharing food with the homeless—that is substantially motivated by religious belief.

96. RFRA specifies that, as used in that section, "'demonstrates' means meets the burden of going forward with the evidence and of persuasion." Mo. Rev. Stat. § 1.302.3.

97. The City cannot present evidence sufficient to show that its application of the Temporary Food Service Ordinance is "essential to further a compelling governmental interest, and is not unduly restrictive considering the relevant circumstances."

98. Unless this Court declares that the Temporary Food Service Ordinance violates RFRA as applied to the Plaintiffs and to persons similarly situated, the

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019                    Page 19 of 21

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

Plaintiffs will suffer great and irreparable harm due to the deprivation of their freedom to exercise their religion by sharing food with the hungry persons they encounter on the streets of St. Louis.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court:

A. Issue a declaration that St. Louis City Code § 11.42.230, Chapter 9, violates the First and Fourteenth Amendments of the U.S. Constitution as applied to the Plaintiffs and others similarly situated;

B. Issue a declaration that St. Louis City Code § 11.42.230, Chapter 9, violates Article I, Section 5 of the Missouri Constitution as applied to the Plaintiffs and others similarly situated;

C. Issue a declaration that St. Louis City Code § 11.42.230, Chapter 9, violates Mo. Rev. Stat. § 1.302 as applied to the Plaintiffs and others similarly situated;

D. Issue an injunction prohibiting the City from enforcing St. Louis City Code § 11.42.230, Chapter 9, against the Plaintiffs and others similarly situated;

E. Award Plaintiffs' attorney fees and costs; and

F. Provide all further legal and equitable relief that the Court may deem just and proper.

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019

Page 20 of 21

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307

Dated this 8th day of January, 2019.

Respectfully submitted,

_David Roland_

DAVID E. ROLAND, #60548MO
FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
Phone:    (573) 567-0307
Fax:      (573) 562-6122

**ATTORNEY FOR PLAINTIFFS**

Complaint
*Redlich, et al. v. City of St. Louis*
Case No. 4:19-cv-00019

Page 21 of 21

FREEDOM CENTER OF MISSOURI
14779 Audrain Road 815
Mexico, Missouri 65265
(573) 567-0307